Thomas J. D'Amato - 219174
    TDamato@mpbf.com
Jeff C. Hsu - 246125
    JHsu@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY
550 S. Hope Street, Suite 650
Los Angeles, CA  90071
Telephone:   (213) 327-3500
Facsimile:    (213) 627-2445

Attorneys for Defendant
ADVANCED CALL CENTER
TECHNOLOGIES, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA– EASTERN DIVISION

| | |
|---|---|
| ROBERT HINDERSTEIN,<br><br>              Plaintiff,<br><br>      v.<br><br>ADVANCED CALL CENTER<br>TECHNOLOGIES, LLC,<br><br>              Defendants. | Case No.: 2:15-cv-10017-DTB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:    March 2, 2017<br>Hearing Time:   10:00 a.m.<br>Courtroom.:        3<br><br>[Notice of Motion, Separate Statement of Undisputed Material Facts, Request for Judicial Notice and Declarations of Marc Keller and Jeff C. Hsu filed concurrently] |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................................... 1

II.    UNDISPUTED MATERIAL FACTS ....................................................................... 2

III.   LEGAL STANDARD ............................................................................................... 4

IV.   ARGUMENT ............................................................................................................ 5

    A.   Defendant Is Entitled to Judgment as a Matter of Law on Plaintiff's Claim for Violation of the FDCPA ................................................................. 5

        1.   Sections 1692d and 1692d(5) of the FDCPA .................................. 5

        2.   There is no evidence that Defendant made telephone calls to Plaintiff with the intent to annoy, abuse or harass him. .................... 5

        3.   Defendant's collection calls alone do not violate the FDCPA .......... 8

    B.   Defendant Is Entitled to Judgment as a Matter of Law on Plaintiff's Claim for Violation of California's Rosenthal Act .................................... 14

V.     CONCLUSION ...................................................................................................... 14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S      CASE NO.
MOTION FOR SUMMARY JUDGMENT      2:15-CV-10017-DTB

# TABLE OF AUTHORITIES

**Page**

### CASES

*Arteaga v. Asset Acceptance, LLC,*
733 F.Supp.2d 1218 (E.D. Cal. 2010) .................................................................... 6, 8, 9, 13

*Bey v. Daimler Chrysler Servs., LLC,*
2006 WL 361385 (D. N.J. Feb 15, 2006) ...................................................................... 10

*Carman v. CBE Group, Inc.,*
782 F.Supp.2d 1223 (D. Kan. 2011) ........................................................................ 10, 11

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................................................................................ 4

*Clark v. Capital Credit & Collection Services, Inc.*
460 F.3d 1162 (9th Cir. 2006) .......................................................................................... 5

*Clemente v. I.C. Sys., Inc.,*
2010 WL 3855522 (E.D. Cal. 2010) ................................................................................ 9

*Fausto v. Credigy Services Corp.,*
598 F.Supp.2d 1049 (N.D. Cal. 2009) ............................................................................ 9

*Fazio v. City & County of San Francisco,*
125 F.3d 1328 (9th Cir. 1997) .......................................................................................... 4

*Fox v. Citicorp Credit Servs., Inc.,*
15 F.3d 1507, 1516–17 (9th Cir. 1994) ........................................................................... 9

*Gorman v. Wolpoff & Abramson, LLP,*
435 F.Supp.2d 1004 (N.D. Cal. 2006), 584 F.3d 1147 (9th Cir. 2009) ...................... 6

*Harvey v. Great Seneca Fin. Corp.,*
453 F.3d 324 (6th Cir. 2006) ........................................................................................... 7

*Jiminez v. Accounts Receivable Mgmt.,*
2010 WL 5829206 (C.D. Cal. 2010) ............................................................................ 6, 9

*Jones v. ACCT,*
2011 WL 2050195 (N.D. Cal. 2011) ................................................................................ 6

*Kerwin v. Remittance Assistance Corp.,*
559 F.Supp.2d 1117 (D. Nev. 2008) ................................................................................ 5

*Krapf v. Nationwide Credit Inc.,*
2010 WL 2025323 (C.D. Cal. May 21, 2010) ................................................................ 8

*Kuhn v. Account Control Technology, Inc.,*
865 F.Supp. 1443 (Dist. Nev. 1994) ................................................................................ 9

- ii -

Case 2:15-cv-10017-DTB Document 52-1 Filed 02/03/17 Page 4 of 19 Page ID
#:492
Case 2:15-cv-10017-DTB Document 43-1 Filed 12/30/16 Page 4 of 19 Page ID #:255

# TABLE OF AUTHORITIES
(continued)

**Page**

*Lashbrook v. Portfolio Recovery Assoc., LLC*,
No. 11–15624, 2013 WL 4604281 (E.D. Mich. Aug. 29, 2013) ..........................7, 11

*Litt v. Portfolio Recovery Associates LLC*,
146 F.Supp.3d 857 (E.D. Mich. 2015) ..................................................................... 12

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) ...................................................................................................4

*Mann v. GTCR Golder Rauner, L.L.C.*,
483 F.Supp.2d 884 (D. Ariz. 2007) ...........................................................................5

*Pasquale v. Law Offices of Nelson & Kennard*,
940 F.Supp.2d 1151 (N.D. Cal. 2013) ..................................................................... 14

*Pugliese v. Professional Recovery Serv., Inc.*,
No. 09–12262, 2010 WL 2632562 (E.D. Mich. June 29, 2010)................................ 12

*Saltzman v. I.C. Sys., Inc.*,
2009 WL 3190359 (E.D. Mich. Sept. 30, 2009) ................................................. 11, 12

*See Joseph v. J.J. MacIntyre Cos. LLC*,
238 F.Supp.2d 1158, 1168 (N.D. Cal. 2002) .............................................................9

*Tucker v. The CBE Group Inc.*,
710 F.Supp.2d 1301 (M.D. Fla. 2010) ...........................................................6, 10, 13

*Tye v. LJ Ross Assoc.*,
No. 11–15195, 2013 WL 424765 (E.D. Mich. Feb. 4, 2013) ................................... 11

*Udell v. Kansas Counselors, Inc.*,
313 F.Supp.2d 1135 (D. Kan. 2004) ................................................................... 11, 12

**STATUTES**

15 U.S.C.
§ 1692d ..................................................................... 1, 3, 5, 6, 7, 8, 11, 12, 13
§ 1692d(5) ........................................................................................5, 6, 7, 10, 13
§§ 1692d(1)-(6) ...........................................................................................................5

Civil Code
§ 1788 *et seq.*.......................................................................................................... 14
§ 1788.17 ..............................................................................................................1, 3

**OTHER AUTHORITIES**

FTC Statements of General Policy or Interpretation Staff Commentary on the FDCPA,
53 Fed. Reg. 50097, 50105 (Dec. 13, 1988) .............................................................8

- iii -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

CASE NO.
2:15-CV-10017-DTB

# TABLE OF AUTHORITIES
(continued)

**Page**

### RULES

Federal Rules of Civil Procedure
   Rule 56...............................................................................................................4
   Rule 56(a) ........................................................................................................4
   Rule 56(c)(2) ...................................................................................................4

- iv -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S    CASE NO.
MOTION FOR SUMMARY JUDGMENT    2:15-CV-10017-DTB

Pursuant to the parties Joint Report (Docket No. 41) and this Court's Minute Order of December 12, 2016 (Docket No. 42), Defendant ADVANCED CALL CENTER TECHNOLOGIES, LLC ("Defendant") submits the following Memorandum of Points and Authorities in support of its Motion for Summary Judgment as to Plaintiff ROBERT HINDERSTEIN's ("Plaintiff") remaining claims for harassment under the Federal Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692d) and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") (Cal. Civ. Code § 1788.17) asserted in the First Amended Complaint.

## I.      INTRODUCTION

This case is one of three separate federal lawsuits brought by Plaintiff against debt collectors in which he alleges the debt collectors violated federal and state Fair Debt Collection Practices Acts by "repeatedly and continuously" calling him.[1,2]  In the other lawsuits, Plaintiff alleges other additional claims, but the universal allegation is repeated and continuous calls.

In the instant case, following Defendant's Motion to Dismiss, Plaintiff's First Amended Complaint is now limited to two claims for relief.  The gravamen of this case boils down to a single issue of whether or not the number of Defendant's unsuccessful and unanswered call attempts to Plaintiff constitute violations of the Federal FDCPA and

---

[1] Besides this action, Plaintiff has initiated a separate action against Synchrony Bank and Genpact International, Inc., C.D. Case No.: 2:16-cv-0050-PLA, asserting claims for violations of the FDCPA and Rosenthal Act related to a TJ Max account.  Notably, in this action, Plaintiff also alleges that between the dates of April 16, 2015 and May 29, 2015, Synchrony and Genpact caused his cellular telephone number to ring repeatedly or continuously with the intent to annoy, abuse, or harass.  In total, Plaintiff alleges he received one hundred thirty-two (132) phone calls. *See Request for Judicial Notice ("RJN"), Exhibit A.*

[2] Plaintiff has also initiated a separate action against Macy's Corporate Services, Inc., Bloomingdales, Inc., and Department Stores National Bank, C.D. Case No.: 2:15-cv-07983-DMG-AFM, asserting claims for violations of the Telephone Consumer Protection Act ("TCPA") and Rosenthal Act related to various department store credit card accounts. Notably, in this action, Plaintiff also alleges that between the dates of April 17, 2015 and July 30, 2015, Department Stores National Bank, in an attempt to collect on a Macy's and/or Bloomingdale's account caused his cellular telephone number to ring repeatedly or continuously with the intent to annoy, abuse, or harass.  In total, Plaintiff alleges he received two hundred forty-eight (248) phone calls. *See RJN, Exhibit B.*

- 1 -

California Rosenthal Act. Defendant does not deny that it attempted to call Plaintiff on many occasions to collect the past-due balance of a GAP-branded credit card issued to him. However, all of Defendant's call attempts before May 10, 2015 either did not connect or were unanswered. After Plaintiff finally answered one of Defendant's calls on May 10, 2015, he asked for Defendant to stop calling and Defendant never called him again. As set forth below, the undisputed facts and evidence show conclusively that Plaintiff's claims are without merit and Defendant is entitled to judgment as a matter of law.

## II.   UNDISPUTED MATERIAL FACTS[3]

Plaintiff maintained a GAP-branded credit card, issued by Synchrony Financial ("Synchrony"). *Sep. Stmt.* at ¶ 1. In or around early 2015, Plaintiff was delinquent on his GAP credit card account, among others, and maintained an outstanding balance of approximately $2,202.00. *Sep. Stmt.* at ¶¶ 2, 3, 4.

Defendant engages in the collection of debts on behalf of creditors, including Synchrony. *Sep. Stmt.* at ¶ 5. Synchrony placed Plaintiff's credit card account with Defendant for collections on or about April 3, 2015. *Sep. Stmt.* at ¶ 6. Synchrony also represented to Defendant that Plaintiff provided the following home telephone number at the time he applied for the Credit Card: (818) 620-9430. *Sep. Stmt.* at ¶ 7.

On April 3, 2015, Defendant mailed Plaintiff a Debt Validation Notice to the address provided for Plaintiff by Synchrony. *Sep. Stmt.* at ¶ 8. This is the only written communication Defendant has ever sent or received with Plaintiff prior to the commencement of this lawsuit. *Sep. Stmt.* at ¶ 9. Afterwards, Defendant attempted to place calls to Plaintiff for the sole purpose of collecting Plaintiff's debt on behalf of Synchrony. *Sep. Stmt.* at ¶ 10. Defendant did not place any calls to Plaintiff for any other purpose or objective, including advertisement or solicitation. *Sep. Stmt.* at ¶ 11.

Plaintiff only complains about 49 calls between the time-period of April 23 to

---

[3] For purposes of this motion, Plaintiff's counsel had agreed to stipulate to a set of operative facts, however despite Defendant's counsel's efforts to suggest facts for stipulation, Plaintiff's counsel failed to respond or agree to stipulate to these facts.

- 2 -

May 10, 2015.[4] *Sep. Stmt.* at ¶ 12. All call attempts from Defendant to Plaintiff were placed between 8:00 a.m. and 9:00 p.m. Pacific Time. *Sep. Stmt.* at ¶ 13. Defendant never placed more than five calls to Plaintiff in a single day. *Sep. Stmt.* at ¶ 14. Defendant allowed at least 90 minutes to elapse between each call that it placed to Plaintiff. *Sep. Stmt.* at ¶ 15. Defendant never intentionally left voicemails for Plaintiff. *Sep. Stmt.* at ¶ 16.[5]

The first and only call from Defendant that Plaintiff answered was placed on May 10, 2015 at approximately 11:05 a.m. Pacific Time. *Sep. Stmt.* at ¶ 17. During this call, Plaintiff advised Defendant's agent that he was going through a divorce and that he had no money to pay the outstanding debt and asked for Defendant's calls to stop. *Sep. Stmt.* at ¶ 18. Prior to this date, Plaintiff never asked Defendant to stop calling him and following this conversation, Defendant made no further calls to Plaintiff. *Sep. Stmt.* at ¶ 19. Plaintiff never told Defendant that he found the number of calls he was receiving from Defendant to be annoying, harassing, abusive or oppressive.

On August 31, 2015 at approximately 3:00 p.m. Pacific Time, Plaintiff called Defendant and asked who they were representing. *Sep. Stmt.* at ¶ 20. There was no further contact between Defendant and Plaintiff until the commencement of this lawsuit. *Sep. Stmt.* at ¶ 21.

Following Defendant's Motion to Dismiss, Plaintiff two remaining claims are: 1) Violation of FDCPA (15 U.S.C. § 1692d) and 2) Violation of California's Rosenthal Act (Cal. Civ. Code § 1788.17), both of which are premised solely on the question of whether the number of calls per day and the aggregate number of calls (49) between the dates of April 23, 2015 and May 10, 2015 only, constitute violations of the FDCPA and Rosenthal

---

[4] Defendant's internal records reflect that between April 3, 2015 and May 10, 2015, Defendant attempted to place approximately 140 calls to Plaintiff at the number 818-620-9430. However, for purposes of this motion, Defendant will accept Plaintiff's own admission and contention that 49 calls between the time-period of April 23 to May 10, 2015 is the call volume at issue. *See Sep. Stmt.* at ¶¶ 12, 22.

[5] Defendant's dialing software uses a voice recognition algorithm to distinguish live people from answering machines. In the unlikely event that the algorithm mistakes an answering machine for a live person, a brief message may be left unintentionally.

- 3 -

Act. *Sep. Stmt.* at ¶¶ 12, 22. For the reasons set forth below, Defendant is entitled to judgment as a matter of law on each of these claims.

## III.   <u>LEGAL STANDARD</u>

A party may move for summary judgment in any action or proceeding where the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The judgment sought by a motion for summary judgment "should be rendered if the pleadings, the discovery, and the disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment  as a matter of law." Fed. R. Civ. P. 56(c)(2). Summary judgment is properly granted to a defendant who shows either that plaintiff cannot establish one or more essential elements of his cause of action or that there is an affirmative defense that bars recovery. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

A moving defendant "is not required to conclusively negate an element of plaintiff's cause of action, but rather need only put forth evidence showing plaintiff does not possess, and cannot reasonably obtain, evidence necessary to establish the elements of the cause of action." *Celotex*, *supra*, 477 U.S. at 323. Once the burden shifts, "plaintiff must set forth facts sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra,* 477 U.S. at 322. A "mere scintilla of evidence" is insufficient to "defeat a properly supported motion for summary judgment; instead, the nonmoving party must introduce some significant probative evidence tending to support the complaint." *Fazio v. City & County of San Francisco,* 125 F.3d 1328, 1331 (9th Cir. 1997).

In response to a summary judgment motion, "the plaintiff can no longer rest on such 'mere allegations' but must 'set forth' by affidavit or other evidence 'specific facts,' which for purposes of the summary judgment motion will be taken to be true." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "[U]ncorroborated and self-serving testimony or declarations, without more, will not create a genuine issue of material fact

- 4 -

Case 2:15-cv-10017-DTB Document 48-1 Filed 12/30/16 Page 10 of 19 Page ID #:201

precluding summary judgment." *Mann v. GTCR Golder Rauner, L.L.C.,* 483 F.Supp.2d 884, 890 (D. Ariz. 2007) (citing *Dubois v. Ass'n Apart. Owners 2987 Kalakaua,* 453 F.3d 1175, 1180 (9th Cir. 2006*)*).

## IV.   ARGUMENT

**A.   Defendant Is Entitled to Judgment as a Matter of Law on Plaintiff's Claim for Violation of the FDCPA**

### 1.   Sections 1692d and 1692d(5) of the FDCPA

Section 1692d of the FDCPA generally prohibits a debt collector from engaging in any conduct of which the natural consequence is to harass, oppress, or abuse any person in connection with the collection of a debt. (15 U.S.C. § 1692d.) In particular, section 1692d contains a list of conduct which may constitute violation. This includes: (1) the use or threat of violence; (2) the use of obscene of profane language; (3) the publication of a list of consumers who refuse to pay the debt; (4) the advertisement for the sale of any debt to coerce payment of the debt; (5) causing a telephone to ring or engaging a person in telephone conversation repeatedly or continuously with *intent* to annoy, abuse, or harass any person at the called number; and (6) the placement of telephone calls without meaningful disclosure of the caller's identity. (15 U.S.C. §§ 1692d(1)-(6) (emphasis added).)

Generally, the FDCPA and section 1692d is a strict liability statute, however, section 1692d(5) is one of the few sections that has an intent requirement. *Clark v. Capital Credit & Collection Services, Inc.* 460 F.3d 1162, 1176, n.11 (9th Cir. 2006). Section 1692d(5) requires that Plaintiff carry the burden of establishing that Defendant's calls in this case demonstrate an *intent* to annoy, harass or abuse. *See Kerwin v. Remittance Assistance Corp.*, 559 F.Supp.2d 1117, 1124 (D. Nev. 2008).

### 2.   There is no evidence that Defendant made telephone calls to Plaintiff with the intent to annoy, abuse or harass him.

To prevail, Plaintiff must allege and prove not only that the frequency and volume of Defendant's telephone calls were harassing, but that Defendant *intended* to harass,

- 5 -

annoy or abuse him as opposed to simply attempting to reach the Plaintiff to discuss the underlying debts. (15 U.S.C. § 1692d(5).) This is because the FDCPA was not enacted to prevent a debt collector from calling a debtor. *Gorman v. Wolpoff & Abramson, LLP*, 435 F.Supp.2d 1004, 1012 (N.D. Cal. 2006), rev'd on other grounds, 584 F.3d 1147 (9th Cir. 2009). Further, the FDCPA does not prohibit <u>multiple phone calls in one day</u> or <u>limit the number of calls</u> that may be made per week. *See Arteaga v. Asset Acceptance, LLC,* 733 F.Supp.2d 1218, 1229 (E.D. Cal. 2010) (daily or near daily calls does not constitute actionable harassment); *Jiminez v. Accounts Receivable Mgmt.*, 2010 WL 5829206 *6 (C.D. Cal. 2010) (defendant granted summary judgment where defendant placed 69 calls over a 115-day period and placed more than 2 calls in one day); *Tucker v. The CBE Group Inc.*, 710 F.Supp.2d 1301, 1305-1306 (M.D. Fla. 2010) (57 calls to plaintiff including 7 calls in one day do not constitute actionable harassment). Instead, a high frequency of calls is <u>only actionable</u> when it demonstrates an intent to annoy, abuse or harass as opposed to simply attempts to reach Plaintiff to confirm or discuss the underlying debt. *See Jones v. ACCT*, 2011 WL 2050195, *3 (N.D. Cal. 2011) (court granted summary judgment upon finding that there was no triable issue of fact that Defendant initiated the phone calls with the intent to harass).

Furthermore, Courts have held that the requirement for a plaintiff to establish that the facts alleged have the natural consequence of harassing or abusing a debtor is tantamount to requiring plaintiff to allege facts that support an inference of intent:

> Section 1692d prohibits debt collectors from "engag[ing] in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of debt." § 1692d. "This provision of the FDCPA lists nonexclusive examples of the type of conduct prohibited by the Act," including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called

- 6 -

number." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 329–30 (6th Cir. 2006) (citing § 1692d(5)). "[A]lthough the question of whether conduct harasses, oppresses, or abuses will [ordinarily] be a question for the jury, . . . Congress has indicated its desire for the courts to structure the confines of § 1692d. Courts have therefore dismissed claims filed pursuant to § 1692d as a matter of law if the facts alleged do not have the natural consequence of harassing or abusing a debtor." *Id*. at 330 (second alteration in original). In other words, the debt collector's conduct must be "intended to embarrass, upset, or frighten a debtor." *Id*.

*Lashbrook v. Portfolio Recovery Assoc., LLC*, No. 11–15624, 2013 WL 4604281, at \*5 (E.D. Mich. Aug. 29, 2013). Thus, while the general proscription of section 1692d does not use the word "intent," such a requirement is inferred from the necessity to establish that the natural tendency of the conduct is to embarrass, upset or frighten a debtor. If the natural tendency of certain conduct is to embarrass, upset or frighten, then one who engages in such conduct can be presumed to have intended the natural consequences of his acts. Indeed, where, as here, the alleged section 1692d violation is based solely upon repetitive calling, it would read the intent requirement out of section 1692d(5) if Plaintiff were permitted to proceed under the general proscription of section 1692d based upon repeated calls without demonstrating, at a minimum, a reasonable inference of intent.

Plaintiff will likely argue that a large number of calls can amount to abusive, harassing or oppressive conduct under section 1692d without meeting the intent requirement of section 1692d(5). Under the facts presented here, Plaintiff is wrong. First, it should be noted that section 1692d(5) includes the term *annoy* while section 1692d does not. Mere annoying conduct on its own does not violate section 1692d. Instead to violate section 1692d, the conduct must meet the very high standard of abusive, harassing or oppressive conduct. In short, where there is improper intent behind the calls, the standard

- 7 -

is lower, but absent intent, the standard is very high.

Here, Defendant has presented evidence that there was no intent to annoy, abuse, or harass Plaintiff and that the calls were made to try and reach him to discuss his debt. In contrast, Plaintiff has not, nor can he, offer any direct evidence that Defendant made the number of telephone calls with an intent to annoy, abuse or harass him. With this absence of evidence, Plaintiff cannot meet his burden of demonstrating that Defendant intended to annoy, abuse or harass him with the telephone calls and summary judgment should be granted.

### 3. Defendant's collection calls alone do not violate the FDCPA

Once again, the only issue to be decided with respect to Defendant's telephone calls to Plaintiff is whether the number and frequency of the calls constitute harassment. Plaintiff's sole contention is that by calling him 49 times over a period of 18 days, Defendant violated section 1692d. *Sep. Stmt.* at ¶¶ 12, 22; *Plaintiff's Response to Interrogatory Nos. 1, 9; Plaintiff's Response to Request for Admissions No. 19* (*Hsu Decl.* at Exhibits 1, 2). However, evidence of the sheer number of calls, standing alone, will not meet Plaintiff's burden of establishing a violation of section 1692d. While the FDCPA does not define what "repeatedly" or "continuously" mean, the Federal Trade Commission, which is the federal agency charged with enforcing the FDCPA, defines "continuously" as "a series of collection calls, one right after another" and defines "repeatedly" as "calling with excessive frequency under the circumstances." FTC Statements of General Policy or Interpretation Staff Commentary on the FDCPA, 53 Fed. Reg. 50097, 50105 (Dec. 13, 1988).

Case law interpreting the FDCPA has held "[w]hether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." *Arteaga, supra,* 733 F.Supp.2d at 1227 (E.D. Cal. 2010). Court opinions differ, however, as to the amount, pattern of calls, or additional conduct sufficient to infer an intent to annoy, harass, or oppress. *See Krapf v. Nationwide Credit Inc.,* 2010 WL 2025323, *3-4 (C.D. Cal. May 21, 2010). Although there is no bright-line rule, certain

- 8 -

conduct generally is found to constitute harassment, while other conduct fails to establish harassment as a matter of law.

For instance, a debt collector may be found to harass a debtor by continually calling the debtor after the debtor has requested that the debt collector cease and desist communication. *See Fox v. Citicorp Credit Servs., Inc.*, 15 F.3d 1507, 1516–17 (9th Cir. 1994). Similarly, a debt collector may harass a debtor by immediately recalling a debtor after a debtor has hung up the telephone or calling the debtor at his or her place of employment. *See Kuhn v. Account Control Technology, Inc.*, 865 F.Supp. 1443, 1453 (Dist. Nev. 1994). Harassment may also be inferred where a debt collector's agents fail to identify themselves when calling a debtor. *See Fausto v. Credigy Services Corp.,* 598 F.Supp.2d 1049 (N.D. Cal. 2009). Most, if not all, situations in which courts have found liability either involve a number of calls after the debtor asks not to be called anymore or a high number of calls within a few minutes of each other. *See Joseph v. J.J. MacIntyre Cos. LLC*, 238 F.Supp.2d 1158, 1168 (N.D. Cal. 2002).

In contrast, where there are simply a high number of calls and no indication that the debtor has asked for the calls to stop or other indicia of harassment, the Courts have generally found no violation as the FDCPA does not prohibit **multiple phone calls in one day** or **limit the number of calls** that may be made per week. *See, e.g., Arteaga, supra,* 733 F.Supp.2d at 1229 (E.D. Cal. 2010) (finding no harassment where debt collector called daily or more often than daily, but did not engage in "egregious" behavior, such as continuing to call after being asked to stop). Also, in *Clemente v. I.C. Sys., Inc.*, 2010 WL 3855522 (E.D. Cal. 2010), a plaintiff's complaint for violations of the FDCPA and Rosenthal Act alleging nothing more than the Defendant caused Plaintiff's phone to ring repeatedly and continuously and that Defendant hung up before Plaintiff or Plaintiff's voicemail answered, was dismissed. Likewise, in *Jiminez v. Accounts Receivable Mgmt.*, 2010 WL 5829206 *6 (C.D. Cal. 2010), summary judgment was granted on claims for alleged violations of the FDCPA and Rosenthal Act where the only charging facts were that the defendant placed 69 unanswered calls.

- 9 -

Case 2:15-cv-10017-DTB Document 48-1 Filed 12/30/16 Page 15 of 19 Page ID #:503

Courts in other jurisdictions have also held that call volume alone does not constitute actionable harassment. In *Bey v. Daimler Chrysler Servs., LLC,* 2006 WL 361385 (D. N.J. Feb 15, 2006), summary judgment was granted in favor of defendants where defendant called multiple times in one day without leaving any messages. The Court held that plaintiff must provide evidence such that a reasonable juror could conclude that such calls were caused by defendants with an intent to harass. Absent such evidence, plaintiff's mere allegations of hang-up calls were insufficient to survive summary judgment.

In *Tucker v. CBE Group, Inc.,* 710 F.Supp.2d 1301 (M.D. Fla. 2010), the court granted summary judgment in favor of the defendant debt collector that had repeatedly called the phone of the plaintiff debtor's father and left voice messages intended for the debtor. The debt collector made a total of 57 calls and up to seven calls in one day, and left a total of six identical voice messages for debtor, but never actually reached the debtor. *Id.* at 1303. Finding no harassment under Section 1692d(5), the court held that,

> While the number of calls made during the relevant time period does seem somewhat high, [the debt collector] only left a total of six messages, made no more than seven calls in a single day, and did not call back the same day after leaving a message. The evidence demonstrates that [the debt collector] placed each of its telephone calls with an intent to reach [the debtor] rather than an intent to harass.

*Id.* at 1305.

*Carman v. CBE Group, Inc.,* 782 F.Supp.2d 1223 (D. Kan. 2011), is also instructive. In *Carman,* the defendant debt collector "called plaintiff's home number 0-4 times a day and called her work number 0-3 times a day, for a total of 149 calls to plaintiff during a two-month period," but only made contact with the plaintiff debtor once. *Id.* at 1227. The court granted the debt collector's motion for summary judgment, concluding that "there is no evidence of an unacceptable pattern of calls" and that "[t]he record is

- 10 -

lacking of any indicia of the type of egregious conduct raising triable issues of fact when coupled with a high call volume." *Id.* at 1232. In granting CBE's summary judgment motion, the court pointed out that "even 'daily' calls, unaccompanied by other egregious conduct," do not, as a matter of law, "evince an intent to annoy, abuse or harass." *Id.* at 1230-32; *see also Udell v. Kansas Counselors, Inc.*, 313 F.Supp.2d 1135, 1143–44 (D. Kan. 2004).

Likewise, the *Lashbrook* case referenced above, involved 120 calls by a debt collector and nothing more. *Lashbrook v. Portfolio Recovery Assocs., LLC*, 2013 WL 4604281 (E.D. Mich. Aug. 29, 2013). The *Lashbrook* court concluded that allegations of nearly daily phone calls, absent allegations regarding the content of the calls, were not sufficient to raise a triable issue of harassment. *Lashbrook*, 2013 WL 4604281, at *6. The court did find that allegations regarding multiple phone calls within a single day that plaintiff actually answered "likely does constitute harassment," even though placing a few calls a day that go unanswered "is likely not harassment." *Id.; see also Tye v. LJ Ross Assoc.*, 2013 WL 424765, at *4 (E.D. Mich. Feb. 4, 2013) (finding that "the amount of calls, in and of themselves, is not a per se violation of the statute," and finding no triable issue as to a violation of section 1692d where there was no evidence beyond the frequency of calls to establish how they were harassing, oppressive or abusive, holding that "a debt collector does not necessarily engage in harassment by placing one or two unanswered calls a day in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages").

In *Saltzman v. I.C. Sys., Inc.*, the defendant placed somewhere between twenty and fifty unsuccessful telephone calls and between two and ten successful telephone calls from approximately November 9, 2008 through December 12, 2008. Nonetheless, the Court held there "no evidence in the record from which a reasonable trier of fact could infer that Defendant acted with the requisite 'intent to annoy, abuse, or harass' in making the telephone calls at issue" where debtor never requested that calls be stopped and never answered the phone, which suggested a difficulty reaching the debtor rather than an intent

- 11 -

to annoy or harass. *Saltzman v. I.C. Sys., Inc.*, 2009 WL 3190359, \*\*6-7 (E.D. Mich. Sept. 30, 2009). As demonstrated by *Saltzman*, courts are hesitant to penalize a debt collector for making telephone calls that go completely unanswered. *Id.*; *accord Udell, supra*, 313 F. Supp. 2d at 1143-44 (D. Kan. 2004) (a debt collector does not necessarily engage in harassment by placing unanswered calls daily in an unsuccessful effort to reach the debtor, if this effort is unaccompanied by any oppressive conduct such as threatening messages). *See also Pugliese v. Professional Recovery Serv., Inc.*, 2010 WL 2632562, at \*9 (E.D. Mich. June 29, 2010) ("To determine whether Defendant's calls amount to harassment, annoyance or abuse, the volume of calls must be examined along with the pattern in which they were made and whether or not they were accompanied by oppressive conduct"). In *Pugliese*, defendants placed approximately 350 calls over an eight-month period, with only about 10 of those calls resulting in an actual conversation. *Id.* at \*10. The court found that plaintiffs failed to establish that these calls, which were ignored by plaintiffs, violated § 1692d where the debt collector was "only making legitimate, while persistent efforts to reach Plaintiff." *Id.* Lastly, in another recent call volume case where summary judgment was granted in a debt collector's favor, the court held there was no evidence the debt collector, in placing over 200 calls to debtor's parents and nothing more, intended to harass the debtor, as required to support debtor's claim under catchall provision of the FDCPA. *Litt v. Portfolio Recovery Associates LLC*, 146 F.Supp.3d 857 (E.D. Mich. 2015).

Here, the indisputable evidence shows that Plaintiff's allegations arise out of a total of 49 calls over a period of 18 days, or an average of 2.72 calls per day. *Sep. Stmt.* at ¶¶ 12, 22. Only one of these calls was ever answered by Plaintiff and Defendant never called Plaintiff again after being asked to stop calling. *Sep. Stmt.* at ¶¶ 17-19. Defendant never called more than five times in a single day, and always waited at least 90 minutes between calls. *Sep. Stmt.* at ¶¶ 14, 15. All calls from Defendant to Plaintiff were placed between 8:00 a.m. and 9:00 p.m. in Plaintiff's local time zone. *Sep. Stmt.* at ¶ 13. Defendant never intentionally left voicemails and, in each of the two instances in which

- 12 -

Case 2:15-cv-10017-DTB Document 52-1 Filed 02/03/17 Page 18 of 19 Page ID
#:506
Case 2:15-cv-10017-DTB Document 45-1 Filed 12/30/16 Page 18 of 19 Page ID #:269

Defendant's collections agents actually communicated with Plaintiff, they clearly identified themselves at the outset of the call. *Sep. Stmt.* at ¶ 16; *see also Call Transcripts* (*Hsu Decl.* at Exhibits 3-4).  Moreover, as in *Tucker*, all of Defendant's calls occurred before any actual contact had been made with Plaintiff.  This indicates an intent to reach Plaintiff, rather than an intent to harass him. *Tucker, supra,* 710 F.Supp.2d at 1305. Most significantly, it cannot be emphasized enough that Defendant discontinued all efforts to contact Plaintiff after he asked for the calls to stop. *Sep. Stmt.* at ¶ 13.

Plaintiff can offer no other evidence in support of his section 1692d claim other than the fact that Defendant attempted to call him many times.  Certainly, none of the attempted calls were accompanied by any threatening or oppressive conduct.  Nor is there any evidence Plaintiff ever instructed Defendant to stop calling him, or that they called back immediately after hanging up on him, factors from which a court could infer the necessary intent to harass, annoy or abuse. *See, e.g., Arteaga, supra,* 733 F.Supp.2d 1218 (surveying cases regarding claims under §§ 1692d and 1692d(5); "daily" or "almost daily" calls not harassment).

Under these circumstances, no reasonable trier of fact could conclude that Defendant intended to harass Plaintiff.  Further, as alleged in the two other FDCPA actions filed against debt collectors by Plaintiff, during the same general time period, Plaintiff was receiving "repeated and continuous" calls from at least three other debt collectors. *See FN 1&2; RJN, Exhibits A and B.*  Certainly Plaintiff was receiving a lot of calls.  This is not disputed.  However, a large number of calls does not in itself constitute a violation of the FDCPA.

These facts compel the conclusion that Defendant called Plaintiff for the sole purpose of collecting the underlying debt, and not with the intent to harass or annoy him. Such calls cannot serve as a basis for liability under sections 1692d and 1692d(5) of the FDCPA.  Since the First Amended Complaint and Plaintiff's own contentions identify no basis for liability other than Defendant's calls, Defendant is therefore entitled to judgment as a matter of law on Plaintiff's claims under these provisions.

- 13 -

**B.      Defendant Is Entitled to Judgment as a Matter of Law on Plaintiff's Claim for Violation of California's Rosenthal Act**

Plaintiff's second remaining claim for relief is for violation of the Rosenthal Act, a state law, codified in Section 1788 *et seq.* of the California Civil Code, which prohibits violations of certain provisions of the FDCPA. *First Amended Complaint* at ¶ 24. Liability under the Rosenthal Act is derivative of liability under the FDCPA. *Pasquale v. Law Offices of Nelson & Kennard*, 940 F.Supp.2d 1151, 1161 (N.D. Cal. 2013). A defendant entitled to summary judgment on FDCPA claims is likewise entitled to summary judgment on concurrent claims under the Rosenthal Act. *Id.* Therefore, Defendant respectfully requests summary judgment as to Plaintiff's claim under the Rosenthal Act for the same reasons set forth in the preceding section of this Motion.

**V.      CONCLUSION**

As set forth above, Defendant attempted to collect a valid debt by placing a reasonable volume of calls to Plaintiff. The calls, all of which were placed during convenient hours and without intentionally leaving voicemails, constituted a legitimate attempt to reach Plaintiff, who did not respond or answer until May 10, 2015. At that time, Plaintiff asked for the calls to stop and they did immediately. As a matter of law, these facts do not give rise to liability for violations of the FDCPA or Rosenthal Act. Therefore, Defendant respectfully requests summary judgment as to Plaintiff's entire First Amended Complaint.

Dated: December 30, 2016

MURPHY, PEARSON, BRADLEY & FEENEY


By */s/ Jeff C. Hsu*
      Jeff C. Hsu
      Attorneys for Defendant
      ADVANCED CALL CENTER
      TECHNOLOGIES, LLC

JCH.3071328.docx

- 14 -