Thomas J. D'Amato - 219174
     TDamato@mpbf.com
Jeff C. Hsu - 246125
     JHsu@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY
550 S. Hope Street, Suite 650
Los Angeles, CA 90071
Telephone: (213) 327-3500
Facsimile: (213) 627-2445

Attorneys for Defendant
ADVANCED CALL CENTER
TECHNOLOGIES, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| ROBERT HINDERSTEIN,<br><br>                    Plaintiff,<br><br>          v.<br><br>ADVANCED CALL CENTER<br>TECHNOLOGIES, LLC,<br><br>                    Defendants. | Case No.: 2:15-cv-10017 DTB<br><br>**REPLY TO RESPONSE TO DEFENDANT ADVANCED CALL CENTER TECHNOLOGIES, LLC'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      March 2, 2017<br>Time:     10:00 a.m.<br>Dept:      3 |

Defendant ADVANCED CALL CENTER TECHNOLOGIES, LLC ("Defendant") hereby submits this Reply to Plaintiff ROBERT HINDERSTEIN's ("Plaintiff") Response to Defendant's Motion for Summary Judgment (Document No. 46).

## I.      INTRODUCTION

In Opposition, Plaintiff's reliance on Telephone Consumer Protection Act ("TCPA") cases in which summary judgment was denied is unavailing, as there is no claim of violation of TCPA and Defendant did not engage in any of the egregious conduct at issue in those matters.  Plaintiff also argues that forty-nine unanswered telephone calls alone evidences intent of abusive, harassing or oppressive conduct. Rather, the indisputable evidence and authorities cited in Defendant's moving papers

- 1 -

Case 2:15-cv-10017-DTB   Document 48   Filed 01/20/17   Page 2 of 9   Page ID #:463

shows that they are not.  The undisputed evidence is that all but one of the forty-nine complained of calls, went completely unanswered and were ignored by Plaintiff. Defendant never left a voice-mail message and Plaintiff only answered the phone once. Plaintiff never informed Defendant that the calls were inconvenient.  After Plaintiff asked Defendant to stop calling, they did.  Plaintiff's remaining claims for harassment under the Federal Fair Debt Collection Practices Act ("FDCPA") (15 U.S.C. § 1692d) and California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") (Cal. Civ. Code § 1788.17) fail as a matter of law because the undisputed timing and frequency of the complained of calls do not constitute unlawful harassment, nonetheless an intent to harass.  Therefore, Defendant respectfully requests the Court to grant summary judgment in its favor.

## II.   ARGUMENT

### A.   Plaintiff Carries the Burden to Prove Intent to Annoy, Harass or Abuse

Plaintiff cites *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1060 (9th Cir. 2011) for the proposition that the FDCPA is a strict liability statute which does not require Plaintiff to carry the burden of establishing that Defendant's calls in this case demonstrate an intent to annoy, harass or abuse. (Opposition p. 5:14-6:1.) However, the *Gonzalez* decision does not address, nor even mention, *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1176, n.11 (9th Cir. 2006) which specifically identified section 1692d(5) as one of the few sections of the FDCPA that has an *intent* requirement.

*Gonzalez* is also distinguishable on its facts as it involved allegations of misrepresentation stemming from letters sent by Arrow to nearly 40,000 California residents based upon stale debts which constituted false, deceptive, or misleading representations in violation of section 1692e of the FDCPA.  *Gonzalez* did not involve any allegations of harassment resulting from telephone calls pursuant to section 1692d or more specifically, section 1692d(5).

Further, Plaintiff concedes that his section 1692d claim is premised solely on whether the complained of number of telephone calls made by Defendant constitutes

- 2 -

harassment.    However, section 1692d(5) provides specific guidelines as to what constitutes harassing conduct in the context of calling a debtor repeatedly or continuously, and therefore, section 1692d(5) should be the sole basis of Plaintiff's FDCPA claim.  The text of section 1692d(5) recognizes that it is permissible to cause a telephone to ring or engage any person in telephone conversation repeatedly as long as such conduct is not coupled with the intent to annoy, abuse, or harass. Thus, there are actually two separate elements of proof to this alleged violation: (1) the frequency of the calls; and (2) the intent of the collector in placing those calls.  This specific provision negates the general rule that the FDCPA is a strict liability statute and therefore the only possible interpretation is that proof of such intent is an essential element of Plaintiff's case, especially when the only conduct complained of is unanswered telephone calls to Plaintiff.  In this limited context, Plaintiff must show the Defendant debt collector's state of mind in order to meet his burden of proof.

Put differently, section 1692d and section 1692d(5) should not be viewed as separate basis for claims for harassment, but rather as a single statutory basis for a claim of harassment in the context of telephone calls made during the course of debt collection. The Supreme Court has long recognized that "It is a cardinal rule of statutory construction that significance and effect shall, if possible, be accorded to every word.... A statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *Mkt. Co. v. Hoffman,* 101 U.S. 112, 115–116, 25 L.Ed. 782 (1879) (internal quotation marks omitted.) "Every part of a statute must be construed in connection with the whole, so as to make all the parts harmonize, if possible, and give meaning to each. *Id.* at 116.

This rule has long been followed in the Ninth Circuit. *Syverson v. IBM*, 472 F.3d 1072, 1086 (9th Cir. 2007). Thus, courts are bound, if possible, to give effect to all of a statute's parts and to seek a construction that will give force to and preserve all the words of the statute.

Here, holding Plaintiff to a standard of proof pursuant to section 1692d claim based

- 3 -

on facts applicable to section 1692d(5) would not only effectively eviscerate the requisite intent contemplated in situations governed by section 1692d(5), but would also render that entire subsection superfluous.  Plaintiff cannot obviate section 1692d(5)'s intent requirement by electing to pursue a section 1692d claim, where the only conduct relied on fits squarely within section 1692d(5).  Any other interpretation would negate the specific language of these statutes.

**B.       The Other Cases Cited by Plaintiff Are Readily Distinguishable**

Besides *Gonzalez,* the other cases cited by Plaintiff in his Opposition are also distinguishable.  Plaintiff first cites to *Kerwin v. Remittance Assistance Corp.*, 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008).  In *Kerwin,* while there were only four (4) phone calls at issue, additional abusive conduct was alleged.  For example, the *Kerwin* plaintiffs received telephone calls after they had asked for them to cease in violation of section 1692c(c).  Additionally, during one of telephone calls, the defendant's employee told the Kerwins to "go ahead and sue" following the Kerwins' complaints and threats to sue. In denying summary judgment, the *Kerwin* court held there was a genuine issue of fact as to whether "go ahead and sue" constitutes abusive language under the FDCPA.  Similarly, "go ahead and sue," if uttered as a challenge to the Kerwins' ability to dispute the debt or to stop RAC's calls, may constitute abusive language under the FDCPA.  In stark contrast, the first and only call from Defendant that Plaintiff answered was placed on May 10, 2015 at approximately 11:05 a.m. Pacific Time.  *Sep. Stmt.* at ¶ 17.  During this call, Plaintiff advised Defendant's agent that he was going through a divorce and that he had no money to pay the outstanding debt and asked for Defendant's calls to stop. *Sep. Stmt.* at ¶ 18. Prior to this date, Plaintiff never asked Defendant to stop calling him and following this conversation, Defendant made no further calls to Plaintiff.  *Sep. Stmt.* at ¶ 19.  Plaintiff admits that during his telephone conversations with Defendant's agents, they did not engage in any harassing or abusive verbal behavior. (*See* Plaintiff's Response to Request for Admissions Nos. 11, 12 attached to *Hsu Decl.* [Document No. 43-4] at Exhibit 2.)

Plaintiff cites to *Stirling vs. Genpact Services, LLC.* 2012 U.S. Dist. LEXIS 49816

- 4 -

REPLY TO OPPOSITION TO DEFENDANT ADVANCED CALL CENTER
TECHNOLOGIES, LLC'S MOTION FOR SUMMARY JUDGMENT

CASE NO.
2:15-CV-10017 DTB

at *10 (C.D. Cal 2012) for the proposition that "calling a debtor incessantly at an average of 5 to 6 times a day, 7 days a week, for almost 4 months evidences intentional harassment or abuse." (Plaintiff's Mot. at p. 8, lines 10-11.) However, the facts of *Stirling* show that the telephonic activity involved in that case were far more egregious than present here. Significantly, the total number of calls at issue in *Stirling* was **649** as compared to just **49** here.

Plaintiff also relies on *United States v. Central Adjustment Bureau, Inc.,* 667 F.Supp.370 (N.D. Tex. 1986) ("*CAB*"), a government enforcement action in which the Federal Trade Commission sought an injunction against the defendant debt collector, which had "consistently and repeatedly" engaged in a host of unlawful conduct, including: (1) placing calls before 8:00 a.m. and after 9:00 p.m.; (2) calling debtors places of employment after being told not to do so; (3) using obscene and profane language in collections calls; (4) stating that debtors were guilty of crimes and would go to jail; and (5) using false and deceptive means to collect debts. *Id.* at 375.

Plaintiff also cites *Kuhn v. Account Control Technology,* 865 F.Supp. 1443, 1453 (D. Nev. 1994) which involved 6 calls within a 24 minute period, two of which occurred after Plaintiff hung up on the defendant. However, Defendant never placed more than five calls to Plaintiff in a single day. *Sep. Stmt.* at ¶ 14. Defendant allowed at least 90 minutes to elapse between each call that it placed to Plaintiff. *Sep. Stmt.* at ¶ 15.

Plaintiff also cites *Sanchez v. Client Services,* 520 F.Supp.2d 1149, 1161 (N.D. Cal. 2007) where the defendant debt collector called 54 times, and leaving 25 messages to Plaintiff's work number with his supervisor and co-workers, including 6 calls in one day. Sanchez's husband even told CS to stop calling after they reached him on his cell phone, but they kept calling his wife's workplace. Mr. Sanchez even tried offering to make payments, which the CS representative apparently mocked and threatened to sue. CS also mailed Sanchez a letter trying to locate her and also to her work to verify her employment. Once again, Defendant never contacted Plaintiff at his work, nor did it ever leave any messages for Plaintiff with co-workers. *Sep. Stmt.* at ¶ 16.

Case 2:15-cv-10017-DTB Document 48 Filed 01/20/17 Page 6 of 9 Page ID #:467

Here, it is indisputable that Defendant **did not** commit any of the aggravating acts or omissions resembling those at issue in *Kerwin, Stirling, CAB, Kuhn* or *Sanchez*. In fact, the defendant in most, if not all of those cases was alleged to have engaged in significant aggravating conduct—independent of call volume. Rather than support Plaintiff's Opposition, these cases reinforce the principle, set forth in Defendant's moving papers, that "even 'daily' calls, unaccompanied by other egregious conduct," do not, as a matter of law, "evince an intent to annoy, abuse or harass." *Carman v. CBE Group, Inc.,* 782 F.Supp.2d 1223, 1230-32 (D. Kan. 2011). Consequently, these authorities are inapposite and unpersuasive.

Plaintiff next attempts to mislead the Court by citing to a series of irrelevant and inapposite cases: 1) *A.D. v. Credit One Bank, N.A.,* 2016 WL 4417077, at *7; 2) *Beal v. Windham Vacation Resorts, Inc.,* 956 F.Supp.2d 962 (W.D. Wis. 2013); 3) *Shupe v. J.P. Morgan Chase Bank,* 2012 WL 1344786 (D. Ariz. Apr. 18, 2012); 4) *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 638 (7th Cir. 2012); and 5) *Van Bergen v. State of Minn.,* 59 F.3d 1541, 1554 (8th Cir. 1995). Each and every one of these cases are irrelevant and can be distinguished based upon the fact they exclusively involve claims for violations of the TCPA. None of these cases claim, nonetheless address, violations of the FDCPA. Thus, any reference to the holdings or factual background in these cases should be ignored.

**C.      Plaintiff's Allegation of Violation of the FDCPA Fails as a Matter of Law.**

In contrast, the authorities cited in Defendant's Motion show that where there are simply a high number of calls and no indication that the debtor has asked for the calls to stop or other indicia of harassment, Courts have generally found no violation. The following cases similarly highlight the need for a pattern of conduct that would provide a basis for a finding of an intent to annoy, abuse or harass the consumer regardless of the number of calls to the consumer. Such a pattern of conduct to demonstrate intent is indisputably missing from this case.

Summary judgment has also been granted in FDCPA cases involving substantially

- 6 -

Case 2:15-cv-10017-DTB Document 48 Filed 01/20/17 Page 7 of 9 Page ID #:468

higher call volumes, both in terms of overall number and call frequency. *Arteaga v. Asset Acceptance, LLC,* 733 F.Supp.2d 1218, 1229 (E.D. Cal. 2010) (daily or near daily calls does not constitute actionable harassment; "significant disparity between the number of telephone calls placed by Defendant with Plaintiff and the number of actual successful conversations with Plaintiff... suggests a difficulty of reaching Plaintiff, rather than an intent to harass."); *Jiminez v. Accounts Receivable Mgmt., Inc.,* 2010 WL 5829206 *6 (C.D. Cal. 2010) (69 calls); *Jones v. ACCT,* 2011 WL 2050195, (N.D. Cal. 2011) (summary judgment granted upon finding that there was no triable issue of fact that Defendant initiated 179 phone calls with the intent to harass); *Carman v. CBE Group, Inc.,* 782 F.Supp.2d 1223 (D. Kan. 2011) (149 total calls); *Tucker v. CBE Group, Inc.,* 710 F.Supp.2d 1301 (M.D. Fla. 2010) (57 calls, including up to 7 calls per day); *Waite v. Financial Recovery Services, Inc.* 2010 WL 5209350, *3, 6 (M.D. Fla. Dec. 16, 2010) (132 calls not a violation of the FDCPA); *Bey v. Daimler Chrysler Servs., L.L.C.,* 2006 WL 361385 (D.N.J. Feb. 15, 2006) (summary judgment granted where defendant called multiple times in one day without leaving any messages); *Pugliese v. Professional Recovery Serv., Inc.,* 2010 WL 2632562, at *9 (E.D. Mich. June 29, 2010) (350 calls over an eight-month period); *Litt v. Portfolio Recovery Associates LLC,* 146 F.Supp.3d 857 (E.D. Mich. 2015) (over 200 calls to debtor's parents and nothing more, not intended to harass the debtor.)

Under the facts of this case, it is indisputable that Defendant **did not** make any threats or leave improper messages, **did not** called Plaintiff immediately after he hung up, **did not** call his place of employment, family, or friends, **did not** call at odd or restricted hours, and most importantly, **did not** call again after Plaintiff requested Defendant to cease calling.

Plaintiff only complains that Defendant called him forty-nine times over the course of seventeen days. It should be noted that during this time, Plaintiff was receiving

REPLY TO OPPOSITION TO DEFENDANT ADVANCED CALL CENTER TECHNOLOGIES, LLC'S MOTION FOR SUMMARY JUDGMENT

CASE NO.
2:15-CV-10017 DTB

"constant and continuous" calls from other debt collectors.[1]  Certainly, he was receiving a lot of calls, however, he simply could have picked up once and instructed Defendant to stop calling him. 15 U.S.C. § 1692c(c). Rather, Plaintiff allowed the uncertainty to continue.

Plaintiff argues that the number of calls from Defendant to Plaintiff is conclusive evidence of Defendant's intent to harass Plaintiff.  However, the number of calls alone does not demonstrate an intent to harass, especially where there is absolutely no contact as is the case here, to put Defendant on notice that its calls were actually being received by Plaintiff.  It is apparent that none of the unanswered calls had any effect on Plaintiff since no contact resulted from those calls.  Thus, the unanswered calls are essentially the telephonic version of the proverbial tree falling in the forest--if the calls were not received nor answered, did they make any noise?

Courts have long recognized that debt collection naturally causes some embarrassment and annoyance. *Beattie v. D.M. Collections, Inc.,* 754 F.Supp. 383, 393-394 (D. Del. 1991). But the fact that collection calls may be unwelcome, disruptive or annoying does not mean that they amount to a violation of federal law.  The authority referenced above and in Defendant's moving papers supports the position that, forty-nine unanswered calls, where there are no other allegations of improper conduct or evidence of intent to harass, should not be deemed a violation of the FDCPA, even when considered under the "least sophisticated debtor" standard.  As such, Defendant respectfully requests this Court grant summary judgment in its favor.

**D.    Plaintiff's Claims For Violation of The Rosenthal Act Fail As A Matter Of Law.**

Plaintiff concedes that if this Court determines Defendant did not violate the FDCPA, his claim pursuant to section 1788.17 which simply incorporates the FDCPA into the RFDCPA, likewise fails.

---

[1] See Defendant's Request for Judicial Notice in Support of Motion for Summary Judgment (Document No. 43-3.)

REPLY TO OPPOSITION TO DEFENDANT ADVANCED CALL CENTER
TECHNOLOGIES, LLC'S MOTION FOR SUMMARY JUDGMENT

CASE NO.
2:15-CV-10017 DTB

Case 2:15-cv-10017-DTB    Document 48    Filed 01/20/17    Page 9 of 9    Page ID #:470

## III.    CONCLUSION

There is no evidence of any improper pattern of calls to show an intent to annoy, abuse or harass Plaintiff.  The only basis raised by Plaintiff for his remaining claims of violation of the FDCPA and Rosenthal Act are the forty-nine complained of unanswered calls to Plaintiff which only evidence an unsuccessful effort by Defendant to reach Plaintiff.  The calls ceased immediately after Plaintiff asked Defendant to stop calling. Based on the foregoing reasons, as well as those stated in the moving papers, Defendant requests summary judgment as to each remaining claim for relief.

Dated: January 20, 2017

                                        MURPHY, PEARSON, BRADLEY & FEENEY


                                        By /s/ Jeff C. Hsu
                                           Jeff C. Hsu
                                           Attorneys for Defendant
                                           ADVANCED CALL CENTER
                                           TECHNOLOGIES, LLC


JCH.3079944.docx

- 9 -