Thomas J. D'Amato - 219174
    TDamato@mpbf.com
Jeff C. Hsu - 246125
    JHsu@mpbf.com
MURPHY, PEARSON, BRADLEY & FEENEY
550 S. Hope Street, Suite 650
Los Angeles, CA 90071
Telephone:  (213) 327-3500
Facsimile:   (213) 627-2445

Attorneys for Defendant
ADVANCED CALL CENTER
TECHNOLOGIES, LLC

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – EASTERN DIVISION

| | |
|---|---|
| ROBERT HINDERSTEIN,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCED CALL CENTER TECHNOLOGIES, LLC,<br><br>Defendants. | Case No.: 2:15-cv-10017-DTB<br><br>**DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**<br><br>Date:      March 2, 2017<br>Time:      10:00 a.m.<br>Dept:      3 |

Defendant ADVANCED CALL CENTER TECHNOLOGIES, LLC ("Defendant") hereby submits this Opposition to Plaintiff ROBERT HINDERSTEIN's ("Plaintiff") Motion for Summary Judgment (Document No. 45).

## I.    INTRODUCTION

The legal issue presented in the parties' respective motions for summary judgment is rather simple and straightforward: whether 49 unanswered telephone calls over the span of 17 days, and **nothing more**, constitutes violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and California's Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788 *et seq.* ("Rosenthal Act").  This is a case in which the undisputed facts establish that Plaintiff

- 1 -

applied for a credit card, accrued a balance, then failed to make payments leaving a trail of creditors in his wake.[1] He subsequently received a series of collections calls from Defendant, among other creditors, which were placed according to strict guidelines to ensure Defendant's compliance with all of its ethical and statutory obligations. When Plaintiff finally answered one of Defendant's calls and asked for them, they did immediately.

Nonetheless, Plaintiff commenced this action against Defendant, asserting claims for: (1) violation of the Fair Debt Collection Practice Act ("FDCPA"); (2) violation of California's Rosenthal Act. As set forth in Defendant's moving papers, Plaintiff's claims under the FDCPA and Rosenthal Act fail as a matter of law because the volume, timing and frequency of Defendant's calls, as alleged by Plaintiff, do not constitute unlawful harassment. Accordingly, Defendant is entitled to summary judgment as to each claim for relief in Plaintiff's Complaint.

## II.    ARGUMENT

### A.    Defendant Is Entitled to Judgment as a Matter of Law on Plaintiff's Claim for Violation of the FDCPA

#### 1.    Plaintiff's Attempt at Reframing the Call Volume at Issue Is a Sham

Defendant feels compelled to briefly address Plaintiff's efforts to characterize the call volume at issue in this case. The allegations contained within Plaintiff's First Amended Complaint (Document No. 8) as well as his own responses to interrogatories, responded under penalty of perjury both only complain about 49 calls between the time-period of April 23 to May 10, 2015. *Sep. Stmt.* at ¶ 12. Plaintiff may not ignore or contradict this judicial admission in his pleadings as a party is conclusively bound by factual allegations in his or her pleadings. *American Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226 (9th Cir. 1988)

Nonetheless, Plaintiff attempts to frame the number of disputed calls at one-

---

[1] See Defendant's Request for Judicial Notice in Support of Motion for Summary Judgment (Document No. 43-3.)

- 2 -

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
CASE NO.
2:15-CV-10017-DTB

hundred and forty-two (142) over a span of thirty-eight (38) days based upon Defendant's internal call records which reflects call attempts including those which did not connect or otherwise failed. Plaintiff's efforts are also flatly contracted by his own purported call log, produced in discovery, which only identifies 49 calls between the time-period of April 23 to May 10, 2015. The Court should therefore disregard as a sham, Plaintiff's attempt to re-characterize his allegations.

**2. The FDCPA Cases Cited by Plaintiff Are Readily Distinguishable**

As shown in Defendant's own Motion, summary judgment has been granted in FDCPA cases involving substantially higher call volumes, both in terms of overall number and call frequency. *Carman v. CBE Group, Inc.,* 782 F.Supp.2d 1223 (D. Kan. 2011) (149 total calls); *Tucker v. CBE Group, Inc.,* 710 F.Supp.2d 1301 (M.D. Fla. 2010) (up to 7 calls per day). Plaintiff nonetheless contends that the call volume at issue in this case (49 calls over a period of 17 days) violates the FDCPA. However, the authorities cited by Plaintiff in support of his position are all readily distinguishable and, collectively, reinforce Defendant's argument for judgment as a matter of law.

Plaintiff first cites to *Kerwin v. Remittance Assistance Corp.,* 559 F. Supp. 2d 1117, 1124 (D. Nev. 2008). In *Kerwin,* while there were only four (4) phone calls at issue, additional abusive conduct was alleged. For example, the *Kerwin* plaintiffs received telephone calls after they had asked for them to cease in violation of section 1692c(c). Additionally, during one of telephone calls, the defendant's employee told the Kerwins to "go ahead and sue" following the Kerwins' complaints and threats to sue. In denying summary judgment, the *Kerwin* court held there was a genuine issue of fact as to whether "go ahead and sue" constitutes abusive language under the FDCPA. Similarly, "go ahead and sue," if uttered as a challenge to the Kerwins' ability to dispute the debt or to stop RAC's calls, may constitute abusive language under the FDCPA. In stark contrast, the first and only call from Defendant that Plaintiff answered was placed on May 10, 2015 at approximately 11:05 a.m. Pacific Time. *Sep. Stmt.* at ¶ 17. During this call, Plaintiff advised Defendant's agent that he was going through a divorce and that he had no money

- 3 -

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT     CASE NO.
2:15-CV-10017-DTB

to pay the outstanding debt and asked for Defendant's calls to stop. *Sep. Stmt.* at ¶ 18. Prior to this date, Plaintiff never asked Defendant to stop calling him and following this conversation, Defendant made no further calls to Plaintiff. *Sep. Stmt.* at ¶ 19. Plaintiff admits that during his telephone conversations with Defendant's agents, they did not engage in any harassing or abusive verbal behavior. (*See* Plaintiff's Response to Request for Admissions Nos. 11, 12 attached to *Hsu Decl.* [Document No. 43-4] at Exhibit 2.)

Plaintiff cites to *Stirling vs. Genpact Services, LLC.* 2012 U.S. Dist. LEXIS 49816 at *10 (C.D. Cal 2012) for the proposition that "calling a debtor incessantly at an average of 5 to 6 times a day, 7 days a week, for almost 4 months evidences intentional harassment or abuse." (Plaintiff's Mot. at p. 8, lines 10-11.) However, the facts of *Stirling* show that the telephonic activity involved in that case were far more egregious than present here. Significantly, the total number of calls at issue in *Stirling* was **649** as compared to just **49** here.

Plaintiff also relies on *United States v. Central Adjustment Bureau, Inc.*, 667 F.Supp.370 (N.D. Tex. 1986) ("*CAB*"), a government enforcement action in which the Federal Trade Commission sought an injunction against the defendant debt collector, which had "consistently and repeatedly" engaged in a host of unlawful conduct, including: (1) placing calls before 8:00 a.m. and after 9:00 p.m.; (2) calling debtors places of employment after being told not to do so; (3) using obscene and profane language in collections calls; (4) stating that debtors were guilty of crimes and would go to jail; and (5) using false and deceptive means to collect debts. *Id.* at 375.

Plaintiff also relies heavily on *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1060 (9th Cir. 2011). The *Gonzalez* is easily distinguishable on its facts as it involved allegations of misrepresentation stemming from letters sent by Arrow to nearly 40,000 California residents based upon stale debts which constituted false, deceptive, or misleading representations in violation of section 1692e of the FDCPA. *Gonzalez* did not involve any allegations of harassment resulting from telephone calls pursuant to section 1692d or more specifically, section 1692d(5). Plaintiff's section 1692e claim has been

- 4 -

DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT       CASE NO. 2:15-CV-10017-DTB

dismissed and the only matter at issue with these motions is Plaintiff's claims based upon section 1692d.  Accordingly, the *Gonzalez* case is inapposite.

Plaintiff also cites *Kuhn v. Account Control Technology,* 865 F.Supp. 1443, 1453 (D. Nev. 1994) which involved 6 calls within a 24 minute period, two of which occurred after Plaintiff hung up on the defendant.  However, Defendant never placed more than five calls to Plaintiff in a single day.  *Sep. Stmt.* at ¶ 14.  Defendant allowed at least 90 minutes to elapse between each call that it placed to Plaintiff.  *Sep. Stmt.* at ¶ 15.

Plaintiff also cites *Sanchez v. Client Services,* 520 F.Supp.2d 1149, 1161 (N.D. Cal. 2007) where the defendant debt collector called 54 times, and leaving 25 messages to Plaintiff's work number with his supervisor and co-workers, including 6 calls in one day. Sanchez's husband even told CS to stop calling after they reached him on his cell phone, but they kept calling his wife's workplace.  Mr. Sanchez even tried offering to make payments, which the CS representative apparently mocked and threatened to sue.  CS also mailed Sanchez a letter trying to locate her and also to her work to verify her employment. Once again, Defendant never contacted Plaintiff at his work, nor did it ever leave any messages for Plaintiff with co-workers. *Sep. Stmt.* at ¶ 16.

Here, there is no evidence or argument before the Court that ACCT committed aggravating acts or omissions even resembling those at issue in *Kerwin, Stirling*, *CAB, Kuhn* or *Sanchez*.  In fact, the defendant in most, if not all of those cases was alleged to have engaged in significant aggravating conduct—independent of call volume.  Rather than support Plaintiff's Motion, these cases reinforce the principle, set forth in Defendant's moving papers, that "even 'daily' calls, unaccompanied by other egregious conduct," do not, as a matter of law, "evince an intent to annoy, abuse or harass." *Carman, supra,* 782 F.Supp.2d at 1230-32. Consequently, these authorities are inapposite and unpersuasive.

Plaintiff next attempts to mislead the Court by citing to a series of irrelevant and inapposite cases: 1) *A.D. v. Credit One Bank, N.A.,* 2016 WL 4417077, at *7; 2) *Beal v. Windham Vacation Resorts, Inc.,* 956 F.Supp.2d 962 (W.D. Wis. 2013); 3) *Shupe v. J.P.*

- 5 -

*Morgan Chase Bank,* 2012 WL 1344786 (D. Ariz. Apr. 18, 2012); 4) *Soppet v. Enhanced Recovery Co., LLC,* 679 F.3d 637, 638 (7th Cir. 2012); and 5) *Van Bergen v. State of Minn.,* 59 F.3d 1541, 1554 (8th Cir. 1995). Each and every one of these cases are irrelevant and can be distinguished based upon the fact they exclusively involve claims for violations of the Telephone Consumer Protection Act ("TCPA"). None of these cases claim, nonetheless address, violations of the FDCPA. Thus, any reference to the holdings or factual background in these cases should be ignored.

### 3. The FDCPA Has No Bright Line Limitation on Collection Calls

It is a matter of established precedent and common sense that, "[w]hen one accepts credit, the debtor impliedly consents for the creditor to take reasonable steps to pursue payment … In the debtor-creditor situation the right of a debtor to privacy is subject to the right of a creditor to take reasonable steps to collect the debt." *Bundren v. Superior Ct.,* 145 Cal.App.3d 784, 789 (1983). A ruling in Plaintiff's favor would encourage credit card debtors to allow a significant balance to accrue, then once that debt is transferred to a collector, ignore the calls, then sue for harassment. This Court should decline to adopt Plaintiffs' reasoning as doing so would effectively outlaw collections phone calls and eviscerate well established rulings from the Ninth Circuit that "some [collection] conduct does not constitute harassment as a matter of law," and open a Pandora's box of frivolous litigation. (*Arteaga v. Asset Acceptance, LLC*, 733 F. Supp. 2d 1218, 1228 (E.D. Cal. 2010).)

Once again, the FDCPA does not prohibit **multiple phone calls in one day** or **limit the number of calls** that may be made per week. (*See Arteaga, supra,* 733 F.Supp.2d at 1229 [daily or near daily calls does not constitute actionable harassment] (emphasis added). Instead, a high frequency of calls is only actionable when it demonstrates an intent to annoy, abuse or harass as opposed to simply attempts to reach Plaintiff to confirm or discuss the underlying debt. (*See Jones v. ACCT,* 2011 WL 2050195, *3 (N.D. Cal. 2011) [court granted summary judgment upon finding that there was no triable issue of fact that Defendant initiated the phone calls with the intent to harass].)

- 6 -

It cannot be emphasized enough here that all call attempts from Defendant to Plaintiff were placed between 8:00 a.m. and 9:00 p.m. Pacific Time. *Sep. Stmt.* at ¶ 13. Defendant never placed more than five calls to Plaintiff in a single day. *Sep. Stmt.* at ¶ 14. Defendant allowed at least 90 minutes to elapse between each call that it placed to Plaintiff. *Sep. Stmt.* at ¶ 15. Defendant never intentionally left voicemails for Plaintiff. *Sep. Stmt.* at ¶ 16

This is once again, in line with the authority cited in the moving papers such as *Clemente v. I.C. Sys., Inc.*, 2010 WL 3855522 (E.D. Cal. 2010), where under almost identical circumstances, a Plaintiff's complaint for violations of the FDCPA and Rosenthal Act alleging nothing more than the Defendant caused Plaintiff's phone to ring repeatedly and continuously and that Defendant hung up before Plaintiff or Plaintiff's voicemail answered, was dismissed. Likewise, in *Jiminez v. Accounts Receivable Mgmt.*, 2010 WL 5829206 *6 (C.D. Cal. 2010) and *Jones v. ACCT*, 2011 WL 2050195, *3 (N.D. Cal. 2011) summary judgment was granted on claims for alleged violations of the FDCPA and Rosenthal Act where the only charging facts were that the defendant initiated 69 and 200 unanswered calls, respectively. Consistent with the rulings in *Clemente, Jones* and *Jiminez*, the FDCPA claims should be adjudicated in Defendant's favor.

**B.     Defendant Is Entitled to Judgment as a Matter of Law on Plaintiff's Claim for Violation of California's Rosenthal Act**

Plaintiff's Motion concedes that his Rosenthal Act claim rises and falls with the claims under the FDCPA. *Pasquale v. Law Offices of Nelson & Kennard*, 940 F.Supp.2d 1151, 1161 (N.D. Cal. 2013). Plaintiff's Motion concedes this point and does not set forth any separate factual issues or bases for liability under the Rosenthal Act. Consequently, summary judgment on Plaintiff's FDCPA claims likewise entitles Defendant to summary judgment of Plaintiff's claim under the Rosenthal Act.

**III.     CONCLUSION**

For the foregoing reasons, as well as those stated in the moving papers, the Court should deny Plaintiff's Motion for Summary Judgment and grant Defendant's Motion for

- 7 -

Case 2:15-cv-10017-DTB Document 47 Filed 01/13/17 Page 8 of 8 Page ID #:455

Summary Judgment.

Dated: January 13, 2017

MURPHY, PEARSON, BRADLEY & FEENEY

By /s/ Jeff C. Hsu
Jeff C. Hsu
Attorneys for Defendant
ADVANCED CALL CENTER
TECHNOLOGIES, LLC

JCH.Document in ProLaw

---

- 8 -