1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

ROBERT HINDERSTEIN,               )   Case No. CV 15-10017-DTB
                                  )
                 Plaintiff,       )
                                  )
        vs.                       )   FINDINGS OF FACT AND
                                  )   CONCLUSIONS OF LAW
ADVANCED CALL CENTER              )
TECHNOLOGIES, et al.,             )
                                  )
                 Defendants.      )
                                  )
_____      )

On December 31, 2015, plaintiff filed this action, alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and the Rosenthal Fair Debt Collection Practices Act ("RFDCPA").  On May 3, 2016, the previously-assigned District Judge granted defendant's motion to dismiss in part, dismissing plaintiff's claims premised on a violation of FDCPA, §§ 1692e and 1692f, with leave to amend.  Plaintiff did not amend the operative First Amended Complaint ("FAC") within the allotted time and on June 24, 2016, defendant filed its Answer.

This matter was assigned to this Court on October 19, 2016, after the parties agreed to waive a jury trial and consent to proceed before the undersigned Magistrate Judge.  The parties stipulated to submitting cross dispositive motions regarding the remaining claims for harassment under FDCPA (15 U.S.C. § 1692d) and RFDCPA

1    (Cal. Civ. Code § 1788.17).  Accordingly, on December 30, 2016, the parties filed

2    cross-motions for summary judgment.   After reviewing the cross-motions for

3    summary judgment, the Court held a telephonic status conference on January 30,

4    2017, during which the parties clarified and mutually agreed that they desired a bench

5    trial on the papers.  In so doing, the parties acknowledged that all of the facts relevant

6    to adjudication are contained in their respective submissions and requested that the

7    Court make any credibility determinations or weigh the evidence as necessary to issue

8    a final adjudication of the matter on the merits.  As such, the motions for summary

9    judgment were vacated and the parties were instructed to submit trial briefs

10   addressing the two remaining claims for harassment under the FDCPA and the

11   RFDCPA.  The parties submitted their respective trial briefs on February 3, 2017.[1]

12        Thus, this matter is now ready for decision.  Having considered all the evidence

13   presented by the parties and the written submissions from both sides, the Court makes

14   the following findings of fact and reaches the following conclusions of law pursuant

15   to Rule 52 of the Federal Rules of Civil Procedure.[2]

16   / / /

17   / / /

18   / / /

19   / / /

20   / / /

21   / / /

22   / / /

23   _____

24        [1]      Both parties incorporated and referenced the undisputed material facts

25   contained in their motions for summary judgment and attached their respective

26   motions to their trial briefs.

27        [2]      Any finding of fact that constitutes a conclusion of law should be treated

28   as such, and any conclusion of law that constitutes a finding of fact should be treated
     as such.

## FINDINGS OF FACT[3]

1. Plaintiff maintained a GAP-branded credit card, issued by Synchrony Financial ("Synchrony"). (Plaintiff's Separate Statement of Undisputed Material Facts ["Pl. SUF"] ¶1; Defendant's Separate Statement of Undisputed Material Facts ["Def. SUF"] ¶1.)

2. In or around early 2015, plaintiff was delinquent on his GAP credit card and maintained an outstanding balance of approximately $2,202.00. (Def. SUF ¶1.)

3. On April 3, 2015, Synchrony placed plaintiff's credit card account with defendant for collections. (Pl. SUF ¶3; Def. SUF ¶6.) Defendant engages in the collection of debts on behalf of creditors, including Synchrony. (Def. SUF ¶5.)

4. On the same date, defendant mailed plaintiff a Debt Validation Notice to the address provided for plaintiff by Synchrony. (Pl. SUF ¶4; Def. SUF ¶8.) This is the only written communication between the parties prior to the commencement of this action. (Def. SUF ¶9.)

---

[3] Defendant objects to portions of the declarations submitted by plaintiff on the grounds that the testimony violates the best evidence rule, contradicts prior judicial admissions, is hearsay, and lacks foundation and personal knowledge. With respect to the Declaration of Stuart Price ("Price"), the Court sustains defendant's objections to Exhibit A, which purports to be a copy of plaintiff's call log. The purported call log appears to be a compilation of other data, but Price has not provided any explanation regarding how this document was compiled, identified the documents or evidence relied upon, or provided any explanation regarding the call log to confirm its accuracy. Price has laid no foundation for this exhibit. The Court also sustains defendant's objection to paragraph 4 of Price's declaration, which is provided based "[u]pon information and belief." See Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1412 (9th Cir. 1995) (declarations based on "information and belief" were not entitled to any weight because the declarants did not have personal knowledge); Columbia Pictures Indus., Inc. v. Prof'l Real Estate Inv'rs, Inc., 944 F.2d 1525, 1529 (9th Cir. 1991). The remaining objections are overruled as moot.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

5.    Thereafter, defendant attempted to place telephone calls to plaintiff for the purpose of collecting plaintiff's debt on behalf of Synchrony. (Pl. SUF ¶5.) From April 23, 2015 through May 10, 2015, defendant called plaintiff at least 49 times.[4] (Pl. SUF ¶7.)[5] All telephone calls from defendant to plaintiff were placed between 8:00 a.m. and 9:00 p.m., pacific standard time, to his cellular telephone.[6] (Def. SUF ¶13.) Defendant never placed more than five telephone calls to plaintiff in a single day and allowed at least 90 minutes to elapse between each telephone call that it placed to plaintiff. (Def. SUF ¶¶14-15.) Defendant never intentionally left voicemails for plaintiff. (Def. SUF ¶16.)

/ / /

---

[4]    Based on the call log attached to the Declaration of Marc Keller in support of defendant's Motion for Summary Judgment ["Keller Decl."], 56 telephone calls were made between April 23, 2015 and May 10, 2015. (See Keller Decl., Exhibit ["Exh."] 3.)

[5]    Although plaintiff alleges that defendant admits to calling plaintiff 142 times between April 3, 2015 and May 10, 2015, this allegation was not raised in the FAC. Rather, in the FAC, plaintiff's claims are based on the time period from April 23, 2015 to May 10, 2015. (FAC at ¶¶20-21; see also Declaration of Jeff C. Hsu ["Hsu Decl."] filed in support of defendant's Motion for Summary Judgment, Exh. 2, Responses to Request for Admission Nos. 19 and 20.) As such, plaintiff did not provide defendant sufficient notice of this new theory of liability. Pickern v. Pier 1 Imports (U.S.), Inc., 457 F.3d 963, 968-69 (9th Cir. 2006). "[W]here, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court." Navajo Nation v. U.S. Forest Serv., 535 F.3d 1058, 1080 (9th Cir. 2008) (en banc); Wasco Prods., Inc. v. Southwall Techs., Inc., 435 F.3d 989, 992 (9th Cir. 2006). Accordingly, plaintiff's claims of harassment shall be based on the April 23, 2015 to May 10, 2015 time frame.

[6]    Synchrony represented to defendant that plaintiff provided his home telephone number at the time he applied for the credit card (Def. SUF ¶7), which plaintiff has represented is actually his cellular telephone number. (FAC at ¶20.)

4

6.  Plaintiff maintains that every time his cellular telephone rang, he had to stop what he was doing, which disrupted his daily activities and train of thought, causing him to experience distraction, frustration, and anxiety. (Pl. SUF ¶9.)

7.  According to two other lawsuits filed by plaintiff in the Central District of California, plaintiff claims that at least two other debt collectors also were calling him during this time period attempting to collect debts owed by plaintiff. (Defendant's Request for Judicial Notice, Exhs. A, B.)[7]

8.  The first and only call from defendant that plaintiff answered was placed on May 10, 2015 at approximately 11:05 a.m., pacific time. (Def. SUF ¶17.) During this call, plaintiff advised defendant's agent that he was going through a divorce and that he did not have any money to pay the outstanding debt. He asked for defendant to stop calling. (Def. SUF ¶18.) Prior to this date, plaintiff never asked defendant to stop calling him and following this conversation, defendant made no further telephone calls to plaintiff. (Def. SUF ¶19.)

///

---

[7]   Defendant requests that the Court take judicial notice of two other complaints filed by plaintiff in the United States District Court for the Central District of California. The Court may take judicial notice of the existence of court filings and another court's orders. See Holder v. Holder, 305 F.3d 854, 866 (9th Cir. 2002) (taking judicial notice of opinion and briefs filed in another proceeding); United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue" (citation omitted)). As such, the Court grants defendant's request for judicial notice and takes judicial notice of the complaints filed in Robert Hinderstein v. Macy's Corporate Services, Inc., et al., Case No. 15-07983-DMG (AFM) and Robert Hinderstein v. Synchrony Bank, et al., Case No. 15-00050-AB (KK).

9.  On August 31, 2015, plaintiff called defendant and asked who it was representing.  (Def. SUF ¶20.)

10. Thereafter, there was no further contact between the parties until the filing of this action.  (Def. SUF ¶21.)

## CONCLUSIONS OF LAW

**I.  15 U.S.C. § 1692d**

1.  "The FDCPA was enacted as a broad remedial statute designed to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'"  Gonzales v. Arrow Fin. Servs., LLC, 660 F.3d 1055, 1060 (9th Cir. 2011) (quoting 15 U.S.C. § 1692(e)). "The FDCPA comprehensively regulates the conduct of debt collectors, imposing affirmative obligations and broadly prohibiting abusive practices." Id.

2.  As relevant here, Section 1692d of the FDCPA prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  15 U.S.C. § 1692d.  The statute includes a non-exhaustive list of conduct that constitutes harassment, oppression, or abuse, including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number." 15 U.S.C. § 1692d(5).

3.  Claims under Section 1692d are viewed "from the perspective of a consumer, whose circumstances make him relatively more susceptible to harassment, oppression, or abuse." Wheeler v. Credit Bureau of Santa Maria, 2015 WL 12669881, at *1 (C.D. Cal. Sept. 3, 2015) (quoting Arteaga v. Asset

Acceptance, LLC, 733 F. Supp. 2d 1218, 1226 (E.D. Cal. 2010)).  Such standard is similar to the "least sophisticated debtor" standard.  Id.; see also Joseph v. J.J. Mac Intyre Cos., LLC, 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002) ("claims under the FDCPA are evaluated under a least sophisticated consumer standard").  This objective standard "ensure[s] that the FDCPA protects all consumers, the gullible as well as the shrewd . . . the ignorant, the unthinking and the credulous." Arteaga, 733 F. Supp. 2d at 1226 (citation omitted).

4.  Although the Ninth Circuit has not addressed the required proof of intent to annoy, abuse, or harass under Section 1692d(5), district courts generally agree that intent may be inferred from circumstantial evidence, such as the nature, pattern, and frequency of the debt collection calls. Schwartz-Earp v. Advanced Call Ctr. Techs., LLC, 2016 WL 899149, at *3 (N.D. Cal. Mar. 9, 2016); Salmas v. I.C. Sys., Inc., 2015 WL 12656944, at *3 (C.D. Cal. June 16, 2015); Stirling v. Genpact Servs., LLC, 2012 WL 952310, at *4 (C.D. Cal. Mar. 19, 2012); Arteaga, 733 F. Supp. 2d at 1227 ("Whether there is actionable harassment or annoyance turns not only on the volume of calls made, but also on the pattern of calls." (quoting Joseph, 238 F. Supp. 2d at 1168)).

5.  However, there appears to be some disagreement as to the specific nature, pattern, and volume of calls that are sufficient to demonstrate a violation of Section 1692d(5).  Based on a survey of cases addressing FDCPA liability, it appears that, absent egregious conduct or an intent to annoy, abuse, or harass a debtor, merely calling a debtor repeatedly, even multiple times in a single day, does not violate the FDCPA.

6.  For instance, courts have found debt collectors in violation of the FDCPA where their agents have intimidated and threatened debtors in telephone conversations and when they have continued to call after the debtor has asked the debt collector to cease communications. In Fox v. Citicorp Credit Services,

Inc., 15 F.3d 1507, 1516 (9th Cir. 1994), the Ninth Circuit found that "[t]hreatening and intimidating calls to a consumer at an inconvenient time or place could rationally support a jury finding of harassing conduct." In Fox, the debtor testified that the debt collector's agent was intimidating and threatening her in phone conversations, which included threats of garnishment and demands for the overnight sending of payments. Further, the debt collector's agent called the debtor at work after the debtor had twice requested that she not be phoned at her place of employment. Similarly, in Kerwin v. Remittance Assistance Corp., 559 F. Supp. 2d 1117, 1124-25 (D. Nev. 2008), the district court concluded that summary judgment was not appropriate where the debt collector's agents told the plaintiffs to "go ahead and sue" in response to their complaints and threats to sue. See also Jones v. Rash Curtis & Assocs., 2011 WL 2050195, at *2 (N.D. Cal. Jan. 3, 2011) ("A debt collector may be found to harass a debtor by continually calling the debtor after the debtor has requested that the debt collector cease and desist communication."); Chiverton v. Fed. Fin. Grp., Inc., 399 F. Supp. 2d 96, 104 (D. Conn. 2005) (defendant debt collector violated FDCPA by repeatedly calling the plaintiff after she told the defendant not to contact her again). By contrast, in Jiminez v. Accounts Receivable Management, Inc., 2010 WL 5829206, at *5 (C.D. Cal Nov. 5, 2011), the district court granted summary judgment in favor of the debt collector where the defendant's agents made 69 telephone calls to the plaintiff over a 115-day period and left only one message for plaintiff, which plaintiff did not maintain was improper. All calls were made between 8:00 a.m. and 6:00 p.m. and no telephone calls were made on the same day within two hours of each other unless a busy signal was received. There was no evidence that the telephone calls were made after the plaintiff had spoken to one of the defendant's agents or had deliberately hung up on the agent. Further, the district court noted that there was no evidence that the plaintiff disputed the

debt or requested that the telephone calls cease.  Under such circumstances, the district court concluded that a reasonable juror would only find that the defendant called the plaintiff with the intent to reach her to collect the debt, and not because it intended to annoy, abuse, or harass her.

7.    In determining liability under Section 1692d(5), courts also have considered whether the debt collector repeatedly called a debtor's work, family, or friends. For instance, in Sanchez v. Client Services, Inc., 520 F. Supp. 2d 1149, 1160-61 (N.D. Cal. 2007), the district court granted the plaintiffs' motion for partial summary judgment where the debt collector called the debtor approximately 54 times at work, left 24 message on the work answering machine, and made numerous other telephone calls to the debtor's husband and other family members.  In such instance, the district court concluded that the frequency and volume of the telephone calls showed that the defendants intended to annoy, abuse, and harass the plaintiff. Id. at 1161.  See also Kerwin, 559 F. Supp. 2d at 1124 ("Intent to annoy, abuse, or harass may be inferred from the frequency of calls, the substance of the calls, or the place to which phone calls are made.").

8.    Courts also have found that "[c]alling a debtor numerous times in the same day, or multiple times in a short period of time, can constitute harassment under the FDCPA." Arteaga, 733 F. Supp. 2d at 1228.  In Martin v. Litton Loan Servicing LP, 2016 WL 4943832, at *8 (E.D. Cal. Sept. 15, 2016), the district court denied the defendant's motion for summary judgment where the plaintiff claimed that the defendant called her every 15 minutes, starting before 7:00 a.m. and until 10:00 p.m.  Based on such circumstances, the district court found that a jury could reasonably conclude that the defendant was calling the plaintiff with the intent to annoy or harass.  Similarly, in Schwartz-Earp, 2016 WL 899149, at *4, the district court denied summary judgment where the defendant called the plaintiff 134 times.  When the plaintiff answered the

telephone call, no live agent would respond and she would eventually hang up. Although the district court noted that "no bright-line rule exists for the amount and pattern of calls necessary to raise a triable issue of harassment, and courts disagree on the issue," it found that calling up to five times a day in one month was sufficient to raise a triable issue of fact. Id. at *3-4 (citation omitted). See also Rucker v. Nationwide Credit, Inc., 2011 WL 25300, at *2 (E.D. Cal. Jan. 5, 2011) (80 calls, multiple times a day, sufficient to create genuine issue of material fact regarding whether the defendant violated the FDCPA); Stirling, 2012 WL 952310, at *4 (a trier of fact could reasonably conclude that calling a debtor an average of five to six times a day, seven days a week, for almost four months evidences intentional harassment or abuse); Krapf v. Nationwide Credit Inc., 2010 WL 2025323, at *4 (C.D. Cal. May 21, 2010) (concluding that a jury could infer an intent to harass or annoy where the debt collector called an average of six times per day and sometimes called twice within a matter of minutes); Kuhn v. Account Control Tech., Inc., 865 F. Supp. 1443, 1453 (D. Nev. 1994) (as corrected) (finding harassment where the debt collector called the plaintiff six times in 24 minutes, and twice after the plaintiff hung up); United States v. Cent. Adjustment Bureau, Inc., 667 F. Supp. 370, 376 (N.D. Tex. 1986) (finding violations of the FDCPA where debt collector called at inconvenient times; made calls to the debtor's work and family members; used harassing and abusive language; threatened the debtors; made false representations; and made as many as four or five telephone calls to the same debtor in one day), aff'd as modified, 823 F.2d 880 (5th Cir. 1987) (per curiam).

9.    In contrast, the district court in Salmas, 2015 WL 12656944, at *3-4 concluded that no reasonable juror could find an intent to annoy, abuse, or harass where the defendant called the plaintiff 30 times in a one-month period and 59 times in five-month period.  The district court noted that the plaintiff never answered

10

1    any of the telephone calls and did not send a cease and desist letter until after
2    the defendant stopped calling.  The district court also noted that, at most, the
3    defendant made three calls a day at reasonable hours, which courts have not
4    found to be egregious or indicative of an intent to harass.  Similarly, in
5    VanHorn v. Genpact Services, LLC, 2011 WL 4565477, at *4-5 (W.D. Mo.
6    Feb. 14, 2011), the district court concluded that, as a matter of law, the
7    defendant's conduct in calling the plaintiff 114 times, almost daily, and
8    sometimes multiple times in a day did not raise a genuine issue of material fact.
9    The district court noted that the defendant did not immediately re-call plaintiff
10   after the plaintiff initially hung up; never had a substantive communication
11   with plaintiff or left a message for plaintiff; and did not make any threatening,
12   profane, or insulting statements to the plaintiff.  The court also found relevant
13   that, during the same time period, at least three other debt collectors also were
14   calling the plaintiff attempting to collect debt and thus, it was not just the
15   defendant causing the plaintiff's telephone to ring.

16   10.  Here, plaintiff contends that defendant violated the FDCPA by repeatedly and
17        continuously calling him approximately 49 times in a 18-day period.  Although
18        the number of calls does seem relatively high, plaintiff has not adduced
19        evidence of egregious conduct on the part of defendant.  All calls were made
20        between 8:00 a.m. and 9:00 p.m, defendant allowed at least 90 minutes to
21        elapse between each call, made no more than five calls in a single day, and did
22        not call plaintiff's work, family, or friends.

23   11.  Plaintiff essentially argues that the FDCPA is violated anytime a debt collector
24        persistently attempts to contact a debtor.  However, this argument is
25        unpersuasive and is not supported by the applicable legal authority.  "The
26        FDCPA does not prohibit debt collectors from employing legitimate,
27        reasonable, non-abusive means to collect debt" and the "[i]ntent to annoy,
28        abuse, or harass cannot be inferred from the simple fact that [d]efendant called

11

1     [p]laintiff daily, or near daily, and occasionally called more than once in a
2     single day after unsuccessful attempts to reach [p]laintiff." VanHorn, 2011
3     WL 4565477, at *4-5. "Any call from a debt collector may be presumed
4     unwelcome, but that alone is insufficient to constitute a violation of the
5     FDCPA." Martin v. Select Portfolio Serving Holding Corp., 2008 WL 618788,
6     at *6-7 (S.D. Ohio Mar. 3, 2008). Although plaintiff may have subjectively
7     believed that defendant's calls were annoying or harassing, as explained above,
8     claims under Section 1692d must be viewed objectively. Arteaga, 733 F. Supp.
9     2d at 1226. Here, the Court finds that the volume of calls resulted from the
10    difficulty in reaching plaintiff, rather than an intent to annoy, abuse, or harass.
11    Defendant's persistent attempts to reach plaintiff were legitimate and
12    reasonable in light of its unsuccessful efforts to reach plaintiff. See Reed v. IC
13    Sys., Inc., 2017 WL 89047, at *5 (W.D. Pa. Jan. 10, 2017) (finding that the
14    number of unsuccessful telephone calls suggested a difficulty in reaching the
15    plaintiff, not an intent to abuse, harass, or annoy).

16    12.   The evidence establishes that plaintiff answered only one of defendant's
17    telephone calls, a telephone call on May 10, 2015. Until that date, defendant
18    never left any messages for plaintiff. During the May 10, 2015 telephone call,
19    plaintiff acknowledged the debt and asked defendant to cease calling. (Hsu
20    Decl., Exh. 3, Transcript of May 10, 2015 telephone call.) Plaintiff does not
21    contend that defendant threatened him, or otherwise made any improper
22    statements during this telephone call. (See also id.) Defendant complied with
23    plaintiff's request and immediately ceased calling him. At no time prior to this
24    telephone conversation did plaintiff notify defendant that he felt harassed or
25    requested that defendant stop calling. Indeed, at least two other debt collectors
26    were calling plaintiff during this same time period. Thus, it was not merely
27    defendant that was causing plaintiff's telephone to ring. See VanHorn, 2011
28    WL 4565477, at *4-5.

13.   Finally, the Court notes that defendant expressly notified plaintiff in writing of his rights under the FDCPA and RFDCPA and provided him the telephone number and the website for the Federal Trade Commission. (Keller Decl., Exh. 1.)  Such evidence does not suggest an intent to annoy, abuse, or harass.

14.   Based on the facts and circumstances in this case, the Court concludes that defendant's conduct did not constitute harassment, oppression, or abuse in violation of the FDCPA.

## II.   Cal. Civ. Code § 1788.17

15.   The above analysis applies equally to plaintiff's RFDCPA claim.  "The Rosenthal Act mimics or incorporates by reference the FDCPA's requirements . . . and makes available the FDCPA's remedies for violations." Riggs v. Prober & Raphael, 681 F.3d 1097, 1100 (9th Cir. 2012) (citing Cal. Civ. Code § 1788.17). Accordingly, whether conduct "violates the Rosenthal Act turns on whether it violates the FDCPA." Id.; Robinson v. Managed Accounts Receivables Corp., 654 F. Supp. 2d 1051, 1060 (C.D. Cal. 2009) ("any conduct by a debt collector which violates the federal FDCPA necessarily violates the California FDCPA as well").

16.   As such, because plaintiff's RFDCPA claim is predicated on his FDCPA claim, the Court also concludes that defendant is entitled to judgment on plaintiff's RFDCPA claim.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

13

1

**CONCLUSION**

2      For the reasons stated above, the Court finds in favor of defendant on plaintiff's

3   remaining claims for harassment under the FDCPA and the RFDCPA.

4

5

6   DATED: February 27, 2017      _____

7                                 DAVID T. BRISTOW

8                                 UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

14